Before we begin, I'd like to remind Council, these microphones do not amplify, they just record. So the people in back of you can't hear a word unless you speak up, and probably neither can we. The clerk will call the case, please. 13-10-22, PQ-4 to Steve and Linda. Council, please come forward and introduce yourself. Good morning. Assistant State's Attorney Lisanne Pugliese, appearing on behalf of the people of the State of Illinois. Thank you. Hi, Peter Skrull for the appellant, Stephen Lengyel. Thank you. You can sit down, please. Thank you. I'm very pleased to quote, Your Honors, Pete Skrull for the appellant, Stephen Lengyel. We'd like to start with the first issue, which is whether the State proved an intentional or knowing murder. The facts here establish a classic case of involuntary manslaughter. This was a brief altercation where Stephen threw a few punches with a bare fist, did not use a weapon, retreated as soon as he saw the injury, called the ambulance that ultimately took Richard to the hospital. At his father's request? Yes. And he knew his father was bleeding? Yes, Your Honor. Well, I think that calling the ambulance, if you look at people, the initial that he held that shows that in that case, I believe the defendant took the bullet and took the victim to the hospital, but they said that if the intent had been to kill, he would not act that way. And I think in this case, if the intent had been to cause death and great bodily harm, he would not call an ambulance. I think this is a classic case of reckless because this was, you know, an argument that escalated. I don't think there was deliberation here. This was Stephen, after Richard grabbed him, he punched him, which clearly was inappropriate, but the question is whether it was the level of an intentional or knowing murder. Well, the State's theory was that according to the medical examiner's testimony, the fractured ribs and the spine fractures were recent injuries. Given the blood in the chest cavity, she thought the rib injuries, the fractured ribs, were incurred at the same time as the head injuries. So couldn't a rational finder of fact infer from that that the beating was actually more extensive than the defendant testified to? Well, I would say that Richard, when he spoke to the detective, just said he had been punched in the head. From the victim's own mouth, we have that it wasn't that type of beating. But I think even if that was, there still was no claim or evidence or anything even to suggest that this was anything but bare fists. So even if there were some other punches, I still don't think that would take this into the case of a knowing or intentional murder. But I also do think that there was evidence presented that this could have been caused from him, you know, Richard busting through the bedroom door. And like I said, Richard himself never said that he, he said he was only hit in the head. So I think that would speak to that. But yeah, regardless, I still think this is a case of involuntary manslaughter, even if there were a couple more punches that caused these other injuries. So I don't think intent can be shown here. So the question then really is knowledge, whether Stephen was practically certain that the outcome of his actions would be death of great bodily harm, or whether he was consciously aware that his actions were likely to cause death of great bodily harm, and consciously disregarded those consequences. I think this falls into the latter. If I may, I would like to address the case of Viramontes, the case that the state cited in the motion to sign additional authority. Because I think it kind of sheds light here. I think Viramontes is distinguishable from this case for several reasons. Viramontes involved a longer, a more severe, and a more deliberate beating. And Viramontes also had the prior beating by the defendant that this court held showed an intent to do harm, which was lacking in this case. So in Viramontes, there was argument. I think the defendant stopped the victim. She locked herself in the bedroom. She came out. There was more argument. It kept escalating through her, into the wall, through over a table, escalated to the point where initially the defendant threw her head into the refrigerator, threw her head, struck her head there, threw her down to the ground, struck her head again. And then when the victim was in the fetal position, he delivered more blows to the head. And, which I think shows the deliberateness that's lacking in this case. If you contrast Viramontes, where there's an escalation and a prolonged beating, with this case, where by all accounts, even the Alexandria court, you know, after the initial encounter, Stephen retreated. He went and locked himself in his bedroom. You know, Richard did bust through the bedroom, and at that point, Stephen did push him, but there was no escalation of any So I believe that this case is much more on point with people v. Jones, where you have a fight and a death that tragically results, but not a death that you can say was intentional or practically certain to occur. Well, how does Richard's physical frailty figure into it? He's on dialysis. He has all sorts of other health problems. He has balance problems. Sure. He really had many health problems. And I do think in this case, though, that at the time this altercation started, I don't think Stephen, I think he was just consciously disregarding the risk that those health problems could play into this death. But also, I would like to point out, you know, he had health problems, but he was strong enough to get up after this altercation and bust through a locked door, which 21-year-old Alexandra Court testified she had been unable to do. So, surely he had health problems. I don't think this is a case like the state cited where, you know, a 3-year-old child or an 85-year-old woman, in fact, Richard was 6'2", 240 pounds, so there wasn't really great disparity. Well, actually, Richard was bigger than Stephen. So, I mean, I think the health problems are one factor, but I think in this case, it's this is a situation where Stephen consciously disregarded the risk that these health problems could lead to a stroke. He didn't intend of knowingly deliver these punches, thinking they would cause a stroke, or practically certain that it would cause a stroke. So, with that, like I said, I don't think that this was a case of anything that Stephen did that was practically certain to cause death or great bodily harm. People v. Jones is a case that I think is really on point here. In that case, it was punched him some more, kicked him in the head, and then stood on his neck. But when the defendant left that fight, the victim was still breathing, although I think the victim in that case seemed to be in much worse shape than Richard was. But I think it shows you, was the defendant practically certain that his actions in that case would cause death or great bodily harm? And this court held no. Sure, he delivered some blows, and he did stand on his neck, and it asphyxiated him, but he didn't know that death was practically certain. And I think when you leave a fight, and the victim is still conscious, I mean in this case the victim was on the ground, but like in our case where Richard was admittedly strong enough to bust in the door, I think that shows that he wasn't practically certain. So I think that in distinguishing some of the cases at state sites that are about much more likely to be involved in a fight, I think it's important to make a strong point with people of E. Jones. If you want to ask any more questions about the first issue, I would like to address the second issue. I think that at the very least, counsel pursued a futile strategy here, and that the facts of this case clearly supported an involuntary manslaughter instruction. You know, I strongly believe that this is only an involuntary case, but in the alternative, counsel should have at least pursued an involuntary manslaughter instruction, because... Well, what was the judge to do when counsel asked for second degree instruction? What would you say the obligation of the judge at that point, considering what you just said? Well, I don't know if the judge's obligation at that point, this is a question not necessarily... I understand. The judge erred, but this is a case like Peabody-Lemke, where the defendant was... there was ineffective assistance for not pursuing the only valid strategy that the defendant... But if there is no basis for second degree, the judge wouldn't have given that instruction. Yes, Your Honor. Is that true? Well, the judge allowed the defendant to pursue self-defense, and in that case, I think you have to also give second degree. I do think that in this case... Does the judge have to give second degree? I believe if they give self-defense instructions, I think you... Well, yes, but... No, it does not have to. Right. But I think in this case, the problem here is not the judge's actions, it's counsel's actions. Counsel, like in Peabody-Lemke, pursued a strategy that was destined to failure. I mean, now, I think the jury found second degree, because they looked at this case, and they thought, this guy's not a murderer, but they had no other option. And if an involuntary manslaughter instruction had been given, I think there's more than a reasonable probability that would have been the verdict that the jury returned. Could counsel have pursued both? Yes, Your Honor. In any way, it's clear that you can pursue self-defense and involuntary manslaughter and second degree. So... Or was it the strategy to go all for one rather than go for both? Why isn't that part of his strategy? I think in some cases the all-or-nothing strategy is a valid strategy, but I think this case is on point with Peabody-Lemke, where if the strategy you choose is futile, it can't be reasonable strategy to forego involuntary. But that goes back to Michael. If it's futile, why would the judge pursue it? You know, say, fine, I'm going to give that instruction. Well, I would say... You're saying it's the mistake of the lawyer. Yes, Your Honor. The lawyer should not have done it. And what I'm saying is, well, if that's true, there's no basis for it, then why would the judge okay it? Maybe because giving the defense attorney the benefit of the doubt. I'm not exactly sure. But I do think also if you look at the fact that the defense counsel asked for second degree, that shows right there he wasn't really pursuing an all-or-nothing strategy here. He was having the jury consider guilt in a lesser culpa momenta state. The problem is he just didn't pursue the one that the facts of the case fit, which is involuntary manslaughter. Do you think, hypothetical, we would be here if he didn't pursue a second degree? And he was found guilty of first-degree murder? Yes, Your Honor. I was making the same arguments here. Because I think the second degree, once again, shows he wasn't really pursuing an all-or-nothing strategy. And, you know, I think the facts of this case didn't fit. I mean, the state and I are in perfect agreement here. The state below objected to the second degree instruction, saying, there's no evidence here of even unreasonable belief in self-defense. And I agree with the state on that point. I mean, I think the jury was looking for a way out here because they did not think that these actions rose to the level of an intentional or knowing murder. But self-defense, reasonable or unreasonable, has to be based on an imminent fear of great bodily harm or death. And there's nothing the state can point to where Stephen had the fear of great bodily harm or death. You know, they mentioned a knife. But the problem is the knife, if he didn't testify that he had knowledge of it at that moment, it's not enough to have a general fear that he has a knife somewhere in the house. We all know self-defense is very specific. And it's not based on he's a bad guy or he had knives or whatever. It has to be an imminent fear. And since that was lacking in this case, there was no chance the jury was going to acquit on self-defense. And I think that was a futile strategy. It's, you know, I think it's the ad council's other chosen strategy of causation was similarly futile. I think it was based on a misapprehension of law, which is what Linke says. You know, in cases where you're pursuing all or nothing strategies, but it's based on a misapprehension of law, they will reverse, even though the record is silent as to regards to the defendants' wishes and the lesser included. As the state has pointed out, I mean, you take your victims as you find them here. So trying to say that, well, there was other things that could have also contributed to the stroke, that's simply not relevant in causation in RMA. The jury was instructed on this, and I believe that that was a similarly futile strategy. I think... You keep using the word futile strategy, but does futile strategy equate to ineffective assistance? The counsel of all times? No, not at all times, but I do think that if you look at Linke, if you have a viable lesser included strategy that's there that doesn't conflict, and involuntary doesn't conflict with self-defense anyway, so I don't think in this case it was a viable strategy to not pursue both. If he was going to go with self-defense, he should have also pursued involuntary. He pursued second degree, which is a much greater offense with a much greater sentencing range, and I believe the facts of this case supported involuntary manslaughter. And it's quite certain that if he had asked for it, the judge would have granted an involuntary. I mean, it only takes slight evidence to warrant the giving of an involuntary manslaughter instruction, and if you look at, I mean, people beat Gresham, a case where a four-year-old was beat with an electric cord and had her head slammed on the wall. They still said, you have to give the instruction because it only takes slight evidence, and I think in the case... You said that if they had asked for it, the judge probably would have given it. Yes, sir. Okay. So it wasn't asked for. I'm going back to my other question. Sure. Does then the judge have any kind of obligation to raise it? I believe the case now says that the judge can give a lesser included even if defense objects, but I don't know if there's an obligation here. But it could have. Should the judge have considered it? I'm trying to vet. Is it the judge's fault or are we talking about a lawyer's? I think it's the lawyer's fault in this case. I think this is a clear case of ineffective assistance that warrants a new trial. I mean, I think that it really was just an involuntary case. In cases where there's a question about this, there's often something in the record that shows that the defense attorney specifically asked the defendant, do you want the lesser included offense or do you want the lesser instruction, and the defendant is the one that says, no, I don't want that. The defendant is the one that makes the all or nothing decision. Yes, Your Honor. In this case that didn't happen. There's nothing in the record that indicated that happened. So we're going with the record saying the defense attorney just made this decision by himself. The decision should have been the defendant's decision. Is that what you're saying? Well, yeah, I think it should have been the defendant's decision. I think it should have been the attorney's decision. I think this was, you know, it's, People think Loki actually deals with that and they say, you know, there is, in many cases, of course, if the record's silent, you would say, well, the counsel was pursuing all or nothing and maybe the defendant wanted that strategy, we don't know. But in this, Loki says, but if you can look at the record and see what counsel was doing was an ineffective, futile strategy, then we're going to reverse regardless of, you know, what was going on. And I think this is clearly a case like that. I mean, I don't think there's anything serious in here that you can say this was a self-defense case or this was a causation case. I think this was involuntary. And the thing is, he could have pursued his self-defense and still sought this involuntary manslaughter instruction. And I think the fact that the jury found second degree in a case that didn't really work, like I said, states that, hey, there's not even enough slight evidence to warrant giving this instruction, and I agree with them. It's because the jury looked at this and said, they did not want to convict him of an intentional murder because the facts didn't support it. But they were given no other alternative. And the case that I'm interested in, this is precisely the type of case. Like, if it's clear that the defendant did something wrong, but you don't give him that option, the jury is likely to convict him even greater. And I think that's what we have here. The jury couldn't look at this and say, he's blameless. I mean, we know he punched him, and we know that Richard didn't have a stroke. And so I think this is a classic case where the only viable strategy was to ask for an involuntary manslaughter instruction, and counsel is ineffective. And I think, notwithstanding my argument in the first argument that this should be reduced to involuntary manslaughter, I think it at least warrants a new trial based on counsel's ineffectiveness. And if you have any questions about the excessive sentence argument, I will reserve the rest of my time for rebuttal. But if I have any time for rebuttal? You've reserved some time. Okay, thank you very much. May it please the Court. The people proved beyond a reasonable doubt that when the defendant beat his father, Richard, he did so with the intent to kill or do great bodily harm to him, or had the knowledge that his acts created a strong probability of death or great bodily harm. And the best evidence of the defendant's intent in this case and knowledge is found in the medical examiner's testimony. While the defendant portrays this beating as brief with only a few punches thrown, clearly the self-serving statement of the defendant is contradicted by the physical evidence in this case. The medical examiner testified that the defendant beat the victim with enough force to cause six rib fractures, five spinal fractures, bleeding on the surface of the brain, swelling of the brain, bleeding within his brain, causing him to have a stroke. Are you saying we should ignore counsel's argument that Richard said it was just a beating on the head? Well, obviously the defendant's testimony, it was a self-serving statement. Richard, you said Richard. I'm sorry, the defendant. I'm sorry, continue. The counsel's argument said Richard, the victim, said it was a beating on the head. And Stephen said before his father passed away he admitted to beating him. While the police officer did speak to the victim on the scene is what you're referring to, the victim did state my son beat me up is what he said. And then he stated he hit him about the face and head. So the medical examiner's testimony countered to what the victim said. I believe that if the officer was able to interview the victim at the hospital, but he was unable to because he wasn't able to talk to him. I believe if he would have interviewed him in a more thorough way he would have gotten the full story. I don't think he was able to get the full story from the victim after he was just beaten on the scene. That's a hypothetical. We don't know. Absolutely. We have to go with what we hear. Absolutely. Well, but the medical examiner did concede that Richard breaking down the door to the bedroom could have caused the other fractures, didn't she? I believe the medical examiner testified that that was inconsistent, that the amount of force if this defendant's testimony that indicates that the victim busted through that door and the witness, his girlfriend, his biased girlfriend. But even if we assume that that happened, then the medical examiner indicated that that amount of force would not have caused the spinal fractures or the rib fractures that the victim suffered. So it was inconsistent with that being the possible reason for those severe injuries. It is consistent with the defendant striking him repeatedly and forcefully in a rage when he was frustrated. So how do you address Jones where you have a victim whose punch is down on the ground, is kicked in the head, the defendant puts his boot on his neck and essentially asphyxiates him, and the court said that's not enough. Well, in that case, unlike this case, the defendant in that case was, the cause of death was not caused by the blows and the kicks to the head. What caused the death in that case was the asphyxiation, and the court found that the defendant standing on the victim, and in that case the victim was much larger than the defendant, he was holding him down waiting for the police to arrive, and they determined that it was reckless for him, he wouldn't have known how long it took to asphyxiate the defendant, that he was standing on his neck holding him down, that that's something that he wouldn't have known. So how do you distinguish that from our defendant who hits his father a few times in the head? Let's assume he punches him in the body. His father is able to get up and break down the door to the bedroom, is able to get to the kitchen to get a paper towel to put on the cut on his head, and tells the defendant to leave. I mean, how do you distinguish those circumstances? Well, again, I just would like to repeat that again, that's the defendant's version of the events of how it happened. We don't have the victim here to tell us what exactly happened. Well, we have the record. We have the evidence. So even assuming that he did do that. Well, there's no other evidence, so what are we supposed to do? Well, looking at that evidence of the defense, well, the jury was able to look at that evidence and determine the credibility of the defendant in this case and obviously determined that his version of the events was not. The jury must have believed that something was odd about the state's case because they wouldn't find first-degree murder. They didn't find first-degree murder. And they weren't given a choice. What I'm concerned about is, I mean, here you've got a victim who's tested positive for opiates, who has a violent history. We know that from the testimony. We know that he was violent enough to crash through a locked door. He's a big man. He has balance problems. And the best the doctor could say was, yes, he had these other recent injuries besides the head injuries. Right. The injuries, they determined them, and of course they had to determine that all the injuries were fresh and recent. So these rib fractures. Fresh and recent. Could have been. Right. And the only testimony that was out there about a prior incident where the victim may have gotten hurt was, I think he referred to a fall two months prior or a fall a week prior, and the medical examiner indicated that that's unlikely because if that was the case, the victim would have had severe problems with respiratory problems or getting around if he had broken ribs and spinal fractures for several weeks to two months. So the more likely scenario is that it happened at the hands of his son. So someone with all the vertebrae and the broken ribs would get up and run through a door, break down a door. That's your theory? Yes. He was able to. With the broken ribs and the fractured back, he can just. Again, I'm going to. That's what you're saying. That's the defendant's testimony. No. That's your testimony is that the defendant may have damaged the father's ribs and vertebrae. Correct. So that was before he went through the door. Yes. It's assuming he, according to the defendant, that he busted through the door. Well, has anybody denied that he went through a door? No. No one else is there to deny other than his biased girlfriend would be my position.  The record shows that, yes. Let's accept it. So apparently he could do this with those fractures? That's what you're saying? Yes. If that's what the defendant said has happened, it's true. If that's the version that you're accepting at this point, then he did do that. And what's important, just to go back to, that this is not some brief. He's portraying this as some brief altercation with a few punches thrown. He had intent and knowledge when he beat his father with this extent of injuries. What extent of injuries? The fractures, the bleeding of the brain. He knew of the fractures before he beat his father? No. With the severity of that beating shows an intent and knowledge is what I'm saying. How is that? There's nothing in the record that demonstrates that this defendant caused the fractured ribs or the fractured back. I think the only thing in the record is the medical examiner said that the fractured ribs and the fractured back were recent. She didn't say they were totally contemporaneous with the head injuries. She just said that they were recent. So he could have done that when he was breaking the door. Even if you don't believe he was breaking the door, he could have done that falling two hours before they had this fate. Who knows? We don't know. Because we don't know, we can't just say the defendant did it. We don't know. I think it's a reasonable inference based on the injuries and based on the medical examiner's testimony to the timing of the injuries, the timing of the bruises were consistent on his back with the rib fractures on his left side and the bruising was contemporaneous with the bruising on his head, that this all was part of one beating. This is a victim who is on opiates, is a big man and has balance problems and walks without a walker or any assistance in his own home. We simply do not know enough about it. Now the state could have presumably done more about demonstrating something to clear this up, but they chose not to. And so we're still left with this big question mark. If there's a question mark, it seems to me we can't just assume that the defendant did it. I think based on all reasonable inferences should be resolved in favor of the state and viewing evidence in light most favorable to the people, that a rational try of fact could have determined that this defendant had the intent and knowledge required for second degree murder. Any other questions on the first issue? No. Okay. With regard to the ineffective assistance of counsel, counsel's performance in this case was not deficient. The defendant has not met both prongs of Strickland. The self-defense theory was based on a viable trial strategy. The defense attorney The state in its closing absolutely decimated the self-defense theory, saying all the defendant said is at some point he was scared. Self-defense requires a reasonable belief in the imminent deadly force, et cetera, et cetera. So how was that a reasonable trial strategy? It's a reasonable trial strategy because the defendant's testimony, a trial lent itself to this strategy where he testified that he was scared of his father, that he was just trying to get away from his father. There was previous statements from the defendant that he'd never seen this look in my father's eyes before. I didn't know what he was going to do. So the defendant's testimony led to this strategy. And it is a viable strategy because the defendant was acquitted of first degree murder and was in fact convicted of second degree murder. So the jury did Do we agree with Mr. Segral that if an involuntary instruction had been requested, the judge would have given it? I believe it's arguable. The judge may or may not have given the instruction based on this determination where there was some evidence of reckless conduct. But I do feel that even if the judge did grant this instruction, sought and granted, it would not have changed the outcome of this case because the jury found the defendant of intent and knowledge to kill his father or do great bodily harm. But they didn't think it was Well, they could have acquitted the defendant, but they did find intent and knowledge. But maybe the whole case rests upon the fact that the involuntary manslaughter instruction should have been given and there was error not to. And again, it was a matter of trial strategy based on the attorney's client's testimony, what he was going to be testifying to. It was a viable strategy at that point. It's not required to get every possible instruction or seek every possible instruction. It was a matter of reasonable trial strategy to choose self-defense and not choose involuntary manslaughter. And in doing so, the specific circumstances that you say justify not giving the reckless? Is there something? Why wouldn't somebody, a lawyer, ask reckless? In this case, he determined that self-defense, arguably self-defense was the stronger defense and he maybe didn't want to muddy the waters or distract the jury from what he believed his strongest defense was. Regardless of why the trial attorney did not ask for involuntary, we need to look at what he did do and does performance not fall below an objective standard of reasonableness where he did seek self-defense in the second degree instruction. And again, he acquitted, the defendant was acquitted of the first degree murder based on his attorney's performance. So we feel he's not been shown, he's been deficient, and the defendant cannot show prejudice in this case where, as I discussed, there's overwhelming evidence of the defendant's intent and knowledge and the outcome of this case would not have been different had an instruction been given for involuntary manslaughter. There's overwhelming evidence of his intent and knowledge? That's our position. I know that's your position, but where is the overwhelming evidence? The medical examiner's testimony is the strongest evidence in this case against him as well as his statements that he beat his father because he was angry and enraged and angry at his behavior in the past. So that is the overwhelming evidence in this case. So for those reasons, if there are no further questions, for those reasons and those included in our brief, we respectfully request that this court affirm the defendant's conviction and sentence. Thank you. Counsel? Just briefly, Your Honor, the state repeatedly refers to the self-serving statement. Mr. Stevens, he never tried to set forth, like, oh, I was afraid of a knife or anything. If you look at when he's being interviewed, he's forthcoming. He turned himself in. He waived his right to counsel. He waived his right to remain silent. He gave extensive statements. And I think that even if there is evidence of these other injuries, even if those were caused by Steven, they still did not rise to the level of an intentional knowing. With regards to the second issue and the self-defense, I think that Steven's own statement and his own testimony established that he was the initial aggressor. So right there, besides the fact that he never even said he was an imminent fear. No, you said he was. Who was he? I'm sorry. Steven said it himself. He said he punched his father first. I mean, how can you go on self-defense when your client's statement, his testimony. His father grabbed his shirt first. Well, yes. The response has to be proportional. And you cannot punch someone because they grabbed onto your shirt strap, I would say. And not to mention, as I noted before, there was really nothing about imminent danger or fear of great bodily harm. So I think that there was not a viable self-defense strategy here. The viable strategy was involuntary manslaughter. So if there are no further questions. Thanks, Sharon. Thank you. Thank you very much. Thank you both for your excellent arguments and your very extensive and helpful briefs. We'll take this under advisement. Thank you.